IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| GAVIN K., et al., <br>               Plaintiffs, <br><br> v. <br><br> DOWNINGTOWN AREA <br> SCHOOL DISTRICT, <br>               Defendant. | : <br> : <br> : <br> : <br> : <br> : Civ. No. 21-3212 <br> : <br> : <br> : <br> : |

### O R D E R

Plaintiffs Gavin K. and his parents, Andrew K. and Allyson K., bring the instant action against the Downingtown Area School District, appealing the Hearing Officer's due process decision under the Individuals with Disabilities Education Act, Section 504 of the Rehabilitation Act of 1973, and related state law. 20 U.S.C. §§ 1400, *et seq.*, 29 U.S.C. § 794. (Compl. ¶ 1.) Alleging that Gavin was denied a free appropriate public education, the parents unilaterally enrolled him in a private school for the 2020-2021 school year and seek tuition reimbursement. (Compl. ¶¶ 5, 7-10.) The Parties have cross-moved for Judgment on the Administrative Record. (Doc. Nos. 10, 11.)

### I.   BACKGROUND

Gavin attended school in DASD from kindergarten through second grade. (Final Decision 3.) In the Fall of first grade, DASD identified Gavin "as a student with a specific learning disability" associated with reading, writing, math, and suffered from Attention-Deficit/HyperActivity Disorder and subclinical anxiety and obsessive-compulsive behaviors. (Final Decision 4.) Gavin's parents enrolled him in Benchmark, a private school, for the 2016-2017 school year when he was in third grade, and he continued to attend Benchmark through sixth grade—the 2019-2020 school year. (Final Decision 4.)

In March 2020, Gavin's parents signed an enrollment contract with Benchmark for the following school year. (Final Decision 4.) At the end of the 2019-2020 school year Gavin "continued to exhibit significant needs in the areas of reading, writing, mathematics, social studies, and science, requiring a number of accommodations and a high level of support." (Final Decision 4.) In May 2020, the parents contacted DASD to request an evaluation. (Final Decision 5.) Because of COVID restrictions, DASD could not evaluate Gavin in May 2020, instead requesting his Benchmark records in June 2020. (Final Decision 5-6.) On August 18, 2020, Gavin's parents notified DASD that: (1) because they did not believe DASD had "offered an appropriate program and placement," they would be enrolling Gavin in Benchmark for the 2020-2021 school year; and (2) they were requesting DASD refund the tuition. (Final Decision 6; Def. Ex 5 at 9.)

In late August 2020, DASD and Gavin's parents had an Individualized Education Program meeting. (Final Decision 6.) The August 2020 IEP "provided for direct, explicit instruction in decoding/encoding, reading comprehension, mathematics, executive functioning, and written expression." (Final Decision 8.) It also provided for "learning support at a supplemental level." (Final Decision 8.) In October 2020, DASD issued an Evaluation Report, assessing cognitive and academic skills. (Final Decision 9.) Gavin scored "well below grade expectations in basic reading skills including fluency and comprehension; mathematics concepts and applications; and written expression skills." (Final Decision 10.) In November 2020, DASD revised the IEP to add additional aids, support, and accommodations. (Final Decision 11-12.)

Benchmark is a private school that "serves children with learning differences in grades one through eight, and has an emphasis on development of executive functioning skills." (Final Decision 16.) The ratio in each classroom is about three students to one teacher. (Final Decision 16.) Benchmark does not "develop or implement IEPs, but creates learning plans for students."

(Final Decision 16.) It uses a "variety of instructional programs and materials," but its instruction is not individualized. (Final Decision 16.) For example, the language arts curriculum is not addressed to student's fluency needs, "except to the extent that continuing to build reading fluency is part of language arts." (Final Decision at 17.) Moreover, instructional reading levels are "based on [the student's] designated grade level, not [] on standardized assessments." (Final Decision 17.)

During the 2020-2021 school year, Gavin took "three periods of language arts, two periods of mathematics, a period for social studies and science, and a period for specials [i.e., enrichment periods]." (Final Decision 17.) Gavin's language arts classes focus on "reading novels and writing assignments." (Final Decision 17.) Benchmark also provides a computer for use at school and home that has software for speech-to-text and book recordings. (Final Decision 17.)

Gavin does not appear to have made progress during his time at Benchmark. Although Gavin "experienced less anxiety" while at Benchmark, his 2016-2017 and 2019-2020 assessments showed that Gavin had performed well below expectations. (Final Decision 16-17.) Moreover, between 2014 and 2021, Gavin's "scores decreased significantly on subtests in a standardized basic reading composite . . . indicating regression in basic reading skills rather than growth." (Final Decision 18.)

## II.   PROCEDURAL HISTORY

On November 25, 2020, Gavin's parents filed a Special Education Due Process Complaint against DASD, alleging it failed to provide Gavin a free and appropriate public education, and seeking reimbursement for Gavin's 2020-2021 Benchmark tuition. (Admin R. Compl., Doc. No. 3-17.) Pennsylvania Hearing Officer Cathy A. Skidmore held a hearing over three dates in January and March 2021. (Final Decision 1 n.4.)

On April 21, 2021, the Hearing Officer issued her final decision denying the tuition claim. (Final Decision 30.) She found that although DASD did not offer Gavin a FAPE, placement at Benchmark was not appropriate. (Final Decision 30.)

On July 20, 2021, Gavin, by and through his parents, and the parents in their own right, initiated this suit, asking me to: (1) reverse the Hearing Officer's Final Decision; and (2) order DASD to pay tuition reimbursement and their reasonable fees and costs. (Compl. ¶ 25.) On February 28, 2022, the Parties each moved for Judgment on the Administrative Record. (Doc. Nos. 10, 11.) The issue is fully briefed. (Doc. Nos. 10-1, 11-1, 12, 13, 14, 15.)

### III.   LEGAL STANDARDS

"Under the IDEA, a state receiving federal educational funding must provide children within that state a 'free appropriate public education' (FAPE)." C.H. v. Cape Henlopen Sch. Dist., 606 F.3d 59, 65 (3d Cir. 2010). Section 504 of the Rehabilitation Act works in tandem with the IDEA. It "prohibits discrimination on the basis of disability by programs that receive federal funds," and requires that those programs provide a FAPE "to each qualified handicapped person who is in the recipient's jurisdiction." P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist., 585 F.3d 727, 30 (3d Cir. 2009). The IDEA "sets forth a positive right" to a FAPE; Section 504 "is cast in negative terms, barring all federally funded entities (governmental or otherwise) from discriminating on the basis of disability." Jeremy H. ex rel. Hunter v. Mount Lebanon Sch. Dist., 95 F.3d 272, 278 (3d Cir. 1996).

Although, a plaintiff "may use the same conduct as the basis for claims under both the IDEA and [Section 504]," he must still prove a violation of Section 504. Andrew M. v. Del. Cnty. Off. of Mental Health & Mental Retardation, 490 F.3d 337, 349 (3d Cir. 2007). To make out a Section 504 violation, a plaintiff must show "(1) he is 'disabled' as defined by the Act; (2) he is

'otherwise qualified' to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at, the school." Id. at 350 (quoting Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 253 (3d Cir. 1999)).

If a school district fails to offer a FAPE under IDEA or Section 504, parents may enroll their child in an appropriate private school and the school district may be required to reimburse the parents for the tuition cost. 20 U.S.C. § 1412(a)(10)(C)(ii); Sch. Dist. of Phila. v. Kirsch, 722 F. App'x 215, 228 (3d Cir. 2018) (parents must prove "deliberate indifference" to obtain tuition reimbursement under Section 504). Although parents may unilaterally "change their child's placement without the consent of state or local officials," they "do so at their own financial risk." Munir v. Pottsville Area Sch. Dist., 723 F.3d 423, 426 (3d Cir. 2013). To receive tuition reimbursement, parents must make out each of the three Burlington-Carter prongs: (1) the school district did not offer their child a FAPE; (2) the private placement is appropriate; and (3) a balance of the equities favors reimbursement. Sch. Comm. of Burlington v. Dep't of Educ. of Mass., 471 U.S. 359, (1985); Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter, 510 U.S. 7, (1993); see also Munir, 723 F.3d at 426.

I review the Hearing Officer's decision under a "modified de novo" standard. D.S. v. Bayonne Bd. Of Educ., 602 F.3d 553, 564 (3d Cir. 2010); Aponte v. Pottstown Sch. Dist., Civ. No. 18-3199, 2020 WL 964419 at *7 (reviewing Hearing Officer's denial of tuition reimbursement under Section 504 using the IDEA modified de novo standard). This "nontraditional standard," requires me to give "'due weight' and deference to the findings in the administrative proceedings." Bayonne, 602 F.3d at 564. I must "consider the '[f]actual findings from the administrative proceedings ... prima facie correct' and, if [I] fail[] to adopt those findings, [I] must explain [my]

5

reasons for departing from them." Mary T. v. Sch. Dist. of Phila., 575 F.3d 235, 242 (3d Cir. 2009) (quoting Shore Reg'l High Sch. Bd. of Ed. v. P.S., 381 F.3d 194, 199 (3d Cir. 2004)). When the Hearing Officer "has heard live testimony and determined that one witness is more credible than another witness," I must accept that determination "'unless the non-testimonial, extrinsic evidence in the record would *justify* a contrary conclusion.'" Bayonne, 602 F.3d at 564 (quoting Shore, 381 F.3d at 199) (emphasis in original).

### IV.    DISCUSSION

Gavin's parents challenge the Final Decision and Order denying their tuition reimbursement claim. (Compl. ¶ 83.) Although the parents agree with the Hearing Officer's conclusion that DASD did not provide a FAPE, they urge that she erred in finding that Benchmark was not an appropriate placement. (Doc. No. 10-1 at 10.) Because I agree that Benchmark was not an appropriate placement, I will not address whether DASD provided a FAPE or whether the balance of equities favors reimbursement. See Mary T., 575 F.3d at 242 (addressing only whether placement was appropriate).

Parents bear the burden of proof of demonstrating that their private placement is appropriate. Carlisle Area Sch. V. Scott P. ex rel. Bess P., 62 F.3d 520, 533 (3d Cir. 1995). A private placement is appropriate if it "provides significant learning and confers meaningful benefit." Id. (quoting Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 276 (3d Cir. 2007)). Placement provides meaningful benefit if it provides an education that is tailored to the student's needs. See H.L. v. Downingtown Area Sch. Dist., 624 F. App'x 64, 70 (3d Cir. 2015) ("What constitutes a 'benefit' depends on the child's potential."). Private placement need not be perfect to be appropriate. Ridgewood, 172 at 249 n.8.

Gavin has "significant needs in the areas of reading, writing, mathematics, social studies, and science, requiring a number of accommodations and a high level of support." (Final Decision 4.) His parents and teachers are concerned about his working memory, planning, and organization. (Final Decision 10.) Yet, the Hearing Officer found that Benchmark does not provide Gavin with targeted intervention to address his reading fluency and decoding. (Final Decision 17.) Indeed, Eleanor Gensemery, the head of Benchmark, testified that in Gavin's current program there is no "guided repeated reading programming to build fluency." (N.T. 226:5-14.) Rather, Gavin is "building fluency as part of language arts" which could be based on novels selected for that grade or "something else." (N.T. 266:9-21.) Gensemery nonetheless acknowledged that "all of the students in the . . . seventh grade reading language arts class are utilizing the same program." (N.T. 254:15-19.)

Garvin's parents challenge the Officer's findings. They argue that Gavin has three check-in periods throughout the day where he receives individualized help in fluency and math. (Pl. Br. 19.) Each of these periods is 20-30 minutes. (N.T. 221:1-16.) The parents also urge that, contrary to the Hearing Officer's finding, Benchmark provides research-based instruction. (Pl. Br. 19.) Gensemery testified: "All of [Benchmark's] instruction is research-based. It's all explicit instruction. It's all carefully woven together. So there's not one program that we [are] ever using." (N.T. 250:16-251.) Yet, Gensemery was unable to explain how the program was specifically tailored to Gavin's needs or upon what research their instruction is based. (N.T. 251-252.) Accordingly, even if I were to accept that Benchmark provides research-based education, the parents have not demonstrated that Benchmark provides Gavin with any instruction tailored to his needs.

Gavin's parents also dispute the Hearing Officer's determination that Gavin did not make progress at Benchmark. (Pl. Resp. 13-14.) They point to: (1) Gavin's Lets Go Learn assessments administered by Gavin's private tutor, which show improvements in word recognition, phonics, reading comprehension, and all areas of math; and (2) testimony from Gensemery and Gavin's father that Gavin was making progress. (Admin. R. P-6 9-10; N.T. 90:2-19, 226:3-11.) In response, DASD points to achievement tests in 2014, 2017 and 2021, which show a significant decrease in reading skills. (Compare Admin. R. S-1 with Admin. R. S-12 145 and Admin. R. S-13 32.) DASD further urges that the Let's Go Learn assessments show only minimal progress. (Def. Resp 5.) Yet, evidence of a child's progress, or lack of progress, although relevant to whether the placement is appropriate, is not dispositive. Gagliardo v. Arlington Central Sch. Dist., 489 F.3d 105, 115 (2d Cir. 2007) ("[P]rogress does not itself demonstrate that a private placement was appropriate."). Here, the minimal progress that the parents made out is insufficient to overcome the lack of instruction designed to address Gavin's specific needs.

In these circumstances, Gavin's parents have not met their burden of showing that Benchmark is a proper placement. Accordingly, I will deny their Motion for Judgment on the Administrative Record. Because Plaintiffs have not prevailed, I will deny their request for attorney's fees. See 20 U.S.C. § 1415(i)(3)(B)(i)(I) (I may award reasonable attorneys' fees "to a prevailing party who is the parent of a child with a disability.")).

\*     \*     \*

**AND NOW**, this 1st day of July, 2022, upon consideration of Plaintiffs' Motion for Judgment on the Administrative Record (Doc. No. 10), Defendant's Motion for Judgment on the Administrative Record (Doc. No. 11), the Parties' Responses (Doc. Nos. 12, 13), the Parties

Replies (Doc. Nos. 14, 15) and the Administrative Record (Doc. No. 3), it is hereby **ORDERED** that:

1. Plaintiffs' Motion for Judgment on the Administrative Record is **DENIED**;

2. Defendant's Motion for Judgment on the Administrative Record is **GRANTED**;

3. **JUDGMENT IS ENTERED** in favor of Defendant and against Plaintiffs; and

4. The Clerk's Office shall **CLOSE** this case.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
Paul S. Diamond, J.